[No. 45995. En Banc. October 11, 1979.]

BURKE & THOMAS, INC., ET AL, *Petitioners,* v.
INTERNATIONAL ORGANIZATION OF MASTERS,
MATES & PILOTS, ET AL,
*Respondents.*

*Kargianis & Austin,* by *George Kargianis,* for petitioners.

*Reaugh, Hart, Allison, Prescott & Davis,* by *Keith R. Baldwin,* for respondents.

HOROWITZ, J.—This case raises the question whether members of the public who are incidentally injured in their personal or business relationships by an unauthorized strike of public employees have a private claim for relief or cause of action against the employees' union to recover damages. We hold that absent sufficient allegations of fact to support a cause of action under existing tort or contract theories, a complaint for such damages is properly dismissed. We further hold that the petitioners in this case have not alleged sufficient facts to support a cause of action, and therefore affirm the dismissal below.

On the eve of the Labor Day weekend in 1976 the respondent International Organization of Masters, Mates and Pilots, the licensed bargaining agent for deck officers of the Washington State Ferry System, called a strike of its members. During the entire weekend these public employees either did not report to work or refused to perform their tasks, causing a complete cessation of normal ferry services for the duration of the holiday weekend. Emergency ferry service was provided for Vashon and San Juan Islands. It appears from the record that the strike appears to have been called because the employer, the Washington Toll Bridge Authority, unilaterally changed the wording of

a contract under negotiation after the union believed agreement had been reached. The strike was in breach of the existing collective bargaining agreement.

The State, the Washington Toll Bridge Authority, and the Washington State Highway Commission immediately obtained a temporary restraining order and order to show cause in the Superior Court for King County, restraining the strike action and requiring the union to appear and show cause why a preliminary injunction should not issue. The petition for an injunction was subsequently dismissed, however, when the employees voluntarily resumed work following the Labor Day weekend.

In November 1976 petitioners here filed a class action for damages in the Superior Court for San Juan County. The named plaintiffs are Washington corporations doing business in San Juan County and individual residents of Island and San Juan Counties, who are dependent on the ferry system for transportation and who allegedly derive a substantial portion of their incomes from tourism. The named plaintiffs claim to represent the class of all persons in the two counties who suffered inconvenience or economic harm from the strike.

The complaint alleged petitioners and the undetermined members of the class suffered inconvenience, disruption, and interference with their daily lives, as well as economic disruption and harm as a result of the unauthorized strike.[1] It further alleges the businesses and residents of the San Juan Islands were especially harmed by the strike because of their reasonable expectation of increased business and income from the heavy tourist traffic normally experienced over the Labor Day weekend. Merchants and resort owners stocked extra supplies, some perishable, in anticipation of

---

[1]Plaintiffs do not contend that economic and noneconomic injuries should be treated differently for the purpose of determining whether a claim for relief exists. We see no basis for doing so. Our conclusions below regarding the existence of a cause of action for plaintiffs' benefit are thus applicable to circumstances where remote parties suffer either economic or noneconomic injury.

the flood of tourists. Resort owners suffered losses in anticipated bookings; tourists planning holidays in the Islands were forced to abandon their plans. The complaint alleged the strike was in violation of the collective bargaining agreement, and state law, but did not state the specific legal grounds, later discussed, upon which plaintiffs rely in seeking to recover.[2] Plaintiffs sought a declaration that the strike was illegal and damages from the union in excess of $1 million.

In response to the complaint the union filed a motion for summary judgment under Superior Court Civil Rule 56 on the ground the complaint failed to state a claim upon which relief could be granted. At this state of the proceedings, before the union had filed an answer, an appropriate motion would have been a motion to dismiss for failure to state a claim upon which relief could be granted under Superior Court Civil Rule 12. This is especially so since the union did not attach any affidavits to its motion, and thus the only documents before the court were the complaint and the motion, which was made to test the sufficiency of the complaint. In response to the union's motion for summary judgment, however, the plaintiffs filed a memorandum of law with affidavits attached. The trial court thereafter properly treated the motion as one for summary judgment under Superior Court Civil Rules 12(c) and 56. Thus, the complaint was properly dismissed if the pleadings, admissions, and affidavits on file, viewed in the light most favorable to the plaintiffs, showed there was no genuine issue as to any material fact, and that the union was entitled to judgment as a matter of law. *Marino Property*

---

[2] Plaintiffs subsequently argued before the Court of Appeals that the union's violation of the temporary restraining order was itself a ground for a third-party action for damages. They cite no authority for the proposition that third parties may claim the benefit of an injunction obtained ex parte on behalf of the State under the circumstances here, as an independent legal ground for a private cause of action for damages. We know of no such authority. Moreover plaintiffs do not advance any argument to support such a claim.

*Co. v. Port of Seattle,* 88 Wn.2d 822, 824, 567 P.2d 1125 (1977); CR 56(c).

The trial court considered all documents submitted by the parties, including documents from the State's suit for injunctive relief, counsels' oral argument, and cited authorities. The court concluded plaintiffs had presented no genuine issue of material fact, and that the only question was whether they had stated a claim upon which relief could be granted. Finding no such claim, the court granted the motion for summary judgment and dismissed the action with prejudice.

On appeal to the Court of Appeals the plaintiffs attempted to cure the omissions in their complaint by arguing two specific causes of action: (1) tortious interference with business relationships, and (2) breach of duty under a third–party beneficiary contract.[3] The Court of Appeals held plaintiffs failed to meet the requisite standard on the motion for summary judgment in that they failed to allege or otherwise put forward sufficient facts to raise a genuine issue of material fact as to either alternative theory. The dismissal was therefore affirmed. This court granted the plaintiffs' motion for discretionary review. We affirm.

Two specific causes of action are alleged by plaintiffs (hereinafter referred to as petitioners), neither of which will lie under the circumstances of this case, as discussed below. A broader question of public policy is raised, however, by the arguments presented to this court in oral argument and by the applicable statutory and decisional law. That question is whether courts should fashion a new remedy which would allow private parties incidentally injured by strikes of public employees, prohibited by contract or law, to recover damages for their injuries, and thus enter the arena of public employee labor relations. We are persuaded by consideration of the unique nature of labor relations in the

---

[3]Neither party contends that federal law is applicable to this case, and we proceed on the assumption that state law governs.

public sector, and by the unified voice of decisional law, that progress in public employee labor relations, and the public welfare in general, are best served at this time by a rule of judicial neutrality and restraint. Creation of a new remedy at this time would contravene this principle, and could substantially interfere with progress toward the goal of labor peace.

I

■ Petitioners first claim that as members of the public they are third–party beneficiaries of the collective bargaining agreement between the union and the public employer, and may therefore maintain an action against the union for breach of its contractual promise not to strike. The creation of a third–party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract. *American Pipe & Constr. Co. v. Harbor Constr. Co.,* 51 Wn.2d 258, 266, 317 P.2d 521 (1957). No such intent may be inferred from the facts alleged here.

Collective bargaining between a union representing public employees and the public employer is a tool for improving the relationship between employer and employee. *See* RCW 41.56.010 (Public Employees' Collective Bargaining); RCW 47.64.030 (Marine Employees–Public Employment Relations). The agreement reached by the parties governs the employee's obligations to the employer, and vice versa. The intent of the contract is thus, presumptively, to agree to the terms and conditions of employment as between the parties. Petitioners contend, however, that the intent of the parties here was that the public employees would assume a direct obligation to members of the public which could be privately enforced by that public. The effect of such an agreement, of course, would be to put the union members in the place of the state agency which is obligated to provide the service to the public. Petitioners point to no language in the contract which indicates such an intent. Nor do they put forward any other evidence tending to show

that the parties here intended any consequence other than the normal agreement to the terms and conditions of employment. There is therefore no evidence that the requisite intent to create a third–party beneficiary relationship is present. In the absence of such an intent, no third–party beneficiary contract exists. *See Titus v. Tacoma Smeltermen's Local 25,* 62 Wn.2d 461, 466, 383 P.2d 504 (1963) (no third–party beneficiary relationship intended by collective bargaining agreement). *See also Isbrandsten Co. v. Local 1291 of Int'l Longshoremen's Ass'n,* 204 F.2d 495, 498 (3d Cir. 1953). We therefore conclude that under the facts put forward by petitioners here, no material issue of fact is raised as to a cause of action for breach of a third–party beneficiary contract, and the complaint was properly dismissed as to that claim.

## II

■ Petitioners next contend they may maintain a tort action against the union, specifically for tortious interference with their business relationships. We do not question that a public employee union may be held to answer for its torts. *See Board of Educ. v. Farmingdale Classroom Teachers Ass'n,* 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975) (abuse of process); *Caso v. District Council 37,* 43 App. Div. 2d 159, 350 N.Y.S.2d 173 (1973) (creation of public nuisance). In this case, however, petitioners have not alleged sufficient facts to state a claim for the specific tort of interference with petitioners' business relationships.

Proof of this tort requires a showing of an intent to interfere with the private business relation. *See Calbom v. Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964). It is the nature of strikes, of course, whether by public or private employees, that members of the public will be affected, and perhaps economically harmed. This result is foreseeable to the striking union members, and we do not doubt that the striking ferry workers here could foresee the disruption of

tourist trade their action would cause. The primary function of a strike, however, is usually as a tool to gain bargaining leverage during contract negotiations with the employer. The object of the work stoppage is typically not to injure any third party, but rather to apply pressure to the employer, in order to further the objectives of the union in negotiating a collective bargaining agreement. The effect on remote parties is only incidental, even though it may be substantial.

Recognizing the nature of a strike as a tool in the bargaining process, courts which have considered the question have held that, in the absence of specific evidence to the contrary, strikes are not to be construed as demonstrating an intent to interfere with the business relations of third parties. *Titus v. Tacoma Smeltermen's Local 25, supra* at 465–66; *Jamur Prods. Corp. v. Quill,* 51 Misc. 2d 501, 273 N.Y.S.2d 348 (1966). *See also Isbrandsten Co. v. Local 1291 of Int'l Longshoremen's Ass'n, supra.* No contrary authority has come to the attention of this court.

In this case petitioners have alleged no facts tending to show that the direct object of the ferry workers' strike was to interfere with petitioners' business relations, rather than to bring pressure to bear on the employer in the course of collective bargaining. Indeed, as noted above, the record suggests that the strike was directly related to a perceived failure of the employer to bargain in good faith. This evidence is contained in an affidavit petitioners themselves furnished to the trial court, and is unchallenged. Petitioners have thus failed to allege or put forward facts necessary to support a finding of the requisite tortious intent, and thus to withstand a motion for summary judgment on their claims for tortious interference with their business relations under established tort doctrine.[4]

---

[4]We do not consider here the question of the possibly tortious intent of persons whose collective activity severely disrupts routine business transactions, where that activity is not directed at an employer or group of employers currently engaged in negotiations with them over work conditions.

### III

■ Our conclusions as to the grounds for the relief sought here would ordinarily require denial of such relief. Underlying petitioners' arguments in briefs and oral argument, however, is the strong suggestion that this court should expand tort doctrine to permit the recovery of damages where the union could reasonably foresee that economic and other harm would befall those businesses and individuals which rely on the ferry system to carry tourist traffic to the islands in Puget Sound. Despite the obvious potential for harm flowing from public employee strikes, existing precedent uniformly rejects such an expansion, and supports instead a doctrine of judicial restraint in the area of public employee labor relations. *See Lamphere Schools v. Lamphere Fed'n of Teachers,* 400 Mich. 104, 252 N.W.2d 818, 84 A.L.R.3d 314 (1977) (no private cause of action by employer for damages flowing from prohibited public employee strike); *Jamur Prods. Corp. v. Quill, supra* (no private cause of action by third parties for damages flowing from prohibited public employee strike). *See also School Comm. v. Westerly Teachers Ass'n,* 111 R.I. 96, 299 A.2d 441 (1973); *School Dist. v. Holland Educ. Ass'n,* 380 Mich. 314, 157 N.W.2d 206 (1968) (judicial restraint to be exercised in determining whether to issue injunction sought by employer against prohibited public employee strikes). We find this authority persuasive, for the reasons set out below.

To put this problem in context, it is necessary to consider the nature of labor relations in the public sector, particularly with regard to strikes. Strikes by public employees have traditionally been held to be illegal under the common law, and have not been sanctioned by state legislatures. *See generally* A. Aboud & G. S. Aboud, *The Right to Strike in Public Employment* (1974); Council of State Governments, *Public Sector Labor Relations* (1975); Practising Law Institute, *New Trends in Public Employee Organizing and Bargaining* (1976); Practising Law Institute, *Strikes and Other Concerted Activity* (1973); R. Smith, H. Edwards, & R. T. Clark, Jr., *Labor Relations in the Public Sector*

(1974); 1 B. Werne, *The Law and Practice of Public Employment, Labor Relations,* ch. 11, p. 486 *et seq.* (1974). Washington has historically adopted this approach, both as a matter of common law and of statute. *See for example Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972); RCW 41.56.120 (strike prohibition as to all public employees covered by Public Employees' Collective Bargaining statute).

The long and difficult process of establishing and maintaining labor peace in the public sector has led to significant changes in public employee labor relations in recent years. Representation of public employees is increasingly dominated by statutory schemes for collective bargaining and dispute resolution. Our own code reflects this development, containing a multitude of statutes with both specific and general applicability to various groups of public employees. *See* RCW Title 41, Public Employment, Civil Service and Pensions. The Public Employees' Collective Bargaining statute, RCW 41.56, is representative of the legislature's attempts to provide for collective bargaining and dispute resolution. Similarly, RCW 47.64 provides for collective bargaining and adjudication of labor disputes for marine employees. The goal of these statutes can be seen to be the achievement of labor peace. *See for example* RCW 41.56.010 (express purpose of Public Employees' Collective Bargaining Act to promote continued improvement of employer–employee relations).[5]

In this heavily regulated area of labor relations, some significant trends may be seen. Recognizing the increasing problem of public employee strikes used as a tool to create

---

[5]The Washington State Legislature has historically indicated its preference for judicial restraint in the area of labor relations. RCW 49.32 (Laws of 1933, 1st Ex. Sess., ch. 7, p. 10) and 49.36 (Laws of 1919, ch. 185, p. 568) both contain provisions expressly limiting the issuance of injunctions in labor disputes. Three crucial sections of RCW 49.32 were held to be unconstitutional encroachments upon the judicial power in *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P.2d 397 (1936). In adopting a rule of judicial restraint as to the creation of new remedies we do not intend any erosion of the rule in *Blanchard,* which upholds the judicial power to issue an injunction in an appropriate case.

pressure in the bargaining process, where that tool is considered necessary to protect the employees' rights, legislatures in some states have responded by providing limited rights to strike for some or all of their employees. *See* A. Aboud & G. S. Aboud, *The Right to Strike in Public Employment, supra,* for a discussion of these recent enactments. *See also* Council of State Governments, *Public Sector Labor Relations, supra.* A parallel development in judicial law is a doctrine of judicial restraint. The courts of two states which prohibit public employee strikes have held they will exercise restraint in granting injunctions sought by public employers against striking employees, requiring a showing that under all the circumstances an injunction is necessary to prevent violence, irreparable injury, or breach of the peace. *School Comm. v. Westerly Teachers Ass'n, supra* (Rhode Island); *School Dist. v. Holland Educ. Ass'n, supra* (Michigan).

Inherent in the doctrine of judicial restraint is a recognition that the delicate balance of labor relations is now primarily the province of the legislature, and that the schemes created by statute for collective bargaining and dispute resolution must be allowed to function as intended, without the added coercive power of the courts being thrown into the balance on one side or the other. As noted by the Rhode Island court in *Westerly,* judicial intervention by providing ex parte injunctive relief in every case of an illegal strike "can make the judiciary an unwitting third party at the bargaining table and a potential coercive force in the collective bargaining processes." *School Comm. v. Westerly Teachers Ass'n, supra* at 104.

This reasoning has direct application to the problem before the court here. We are asked to expand the established doctrine of tort law to allow recovery of damages by parties incidentally injured by an unauthorized public employee strike. Yet to do so would be to create a weapon which could conceivably be used by both sides to the

agreement, one which was neither anticipated by the legislature nor included in its comprehensive scheme for collective bargaining and resolution of labor disputes.

The reporters for the Restatement (Second) of Torts have recognized the inapplicability of developing tort principles to the field of the labor relations:

> Obviously, the law of labor disputes and their effect in interfering with contractual relations has ceased to be regarded as a part of Tort Law and has become an integral part of the general subject of Labor Law, with all of its statutory and administrative regulations . . .

4 Restatement (Second) of Torts, introductory note, at 2 (1979). The new Restatement thus omits any statement of labor disputes as related to the tort of interference with business relations.

An illustration of the merger of wrongful labor conduct into the law of labor relations is found in the federal National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* applicable to private employee labor relations. Section 303 of the act, 29 U.S.C. § 187, creates a statutory action for damages on behalf of employers and third parties injured in their business or property by prohibited secondary boycotts, recognitional strikes and work assignment strikes. *See* R. Gorman, *Labor Law,* ch. 15, § 3, at 291 (1976) for discussion of this section. The cause of action is limited to a certain class of unfair labor practices which Congress clearly found particularly objectionable and does not apply to primary strikes in the course of collective bargaining. It illustrates the careful use of such a private cause of action as an integral part of the statutory scheme.

Our conclusion that a rule of judicial restraint is appropriate in the creation of remedies in the area of public employee labor relations was reached by the Supreme Court of Michigan in a decision holding there would be no private cause of action by the employer, a party to the collective bargaining agreement, for damages against the union flowing from a public employee strike. *Lamphere Schools v. Lamphere Fed'n of Teachers, supra.* In that case

the employer school district brought suit to recover damages for the injury it suffered as a result of an illegal strike by its teachers. The court reviewed Michigan's comprehensive statutory scheme for resolving labor disputes with public employees and found such a private action for damages would undermine the authority of the statutory mediating body and interfere with the legislative scheme. Even apart from the requirements of the statutory scheme, however, the court concluded such an action should not be created as a matter of policy, since, far from promoting labor peace, such a remedy would only exacerbate labor disputes.

> Courts venture into dangerous and basically unchartable waters when they "tinker" with existing legislative schemas such as [Michigan's public employment relations act]. The precarious and uneasy balance of labor–management power which exists in the public labor relations sector could be easily upset. Neither law nor reason gives basis for any additional modification of the Legislature's exhibited intent to limit remedies available in this situation.

*Lamphere Schools v. Lamphere Fed'n of Teachers, supra* at 131. The court thus followed a rule of restraint in the creation of judicial remedies.

The ferry workers in this case were subject to the jurisdiction of the public employment relations commission for adjustment of all labor disputes, complaints and grievances. RCW 47.64.030. It was disclosed at oral argument that the contract dispute here was in fact submitted to the commission, and was subsequently resolved by that body. Had an action for damages been available to one of the parties to the dispute (the question considered by the Michigan court in *Lamphere*), the effectiveness of the commission's authority to adjust the dispute would have been seriously eroded.

Creation of a cause of action on behalf of third parties (the question before this court) would have a similarly detrimental effect on the commission's authority. First, liability of the union to remote persons for damages flowing from its conduct could render the commission's adjustment a

meaningless exercise, since enormous penalties not subject to their control could be imposed on one of the parties. Furthermore, if a private cause of action existed for third parties affected by the strike, there is no logical bar to extension of the cause of action for damages to the employer, an actual party to the contract, since the employer is even more directly affected by the harmful conduct of the union. Thus the employer would have a powerful penalty within its control which is not subject to the commission's jurisdiction, further eroding the authority of that body to equitably adjust the dispute.

We must also bear in mind that the potential sanction a private cause of action would create would not be limited in its effect to penalizing a union which strikes in violation of its collective bargaining agreement or statute. Should the state employer fail to bargain in good faith or otherwise breach its duty under contract or statute, it may equally be liable under the tort action proposed here. Furthermore, the existence of such an action would complicate the bargaining process substantially. As noted by the Michigan court:

> To recognize alternative tort remedies would result in a substantial negative impact upon [the legislative goal of prompt and fair resolution of disputes]. It would encourage future [employer] inaction. Eventual settlements could be prolonged pending the resolution of multiple tort claims and counterclaims. The inevitable result would be to create labor law logjams in our courts and, at the same time, to exacerbate labor–management disputes.

*Lamphere Schools v. Lamphere Fed'n of Teachers, supra* at 131.

It need hardly be said that indemnification for tort liability would or could quickly become a subject for bargaining which every public employee union would or could insist upon as a clause in its contract thus creating costly burdens to one or another of the parties thereby complicating further the bargaining process.

In declining to recognize a new cause of action for damages we do not leave citizens of this state without remedy for injurious strikes by public employees. As evidenced by the King County suit for injunctive relief brought by the State, the Toll Bridge Authority, and the State Highway Commission almost immediately upon commencement of the ferry workers' strike, injunctive relief may be available upon application by the State to prevent substantial injury to the public. *See Port of Seattle v. International Longshoremen's & Warehousemen's Union,* 52 Wn.2d 317, 324 P.2d 1099 (1958). In the absence of such state action to prevent a ferry strike of the kind here involved, plaintiffs whose class may well include residents, ferry users and taxpayers in the adversely affected community, may make a demand upon the State Attorney General to comply with his duty to seek appropriate injunctive relief, and upon his refusal to comply, initiate such suit themselves. *See Tabor v. Moore,* 81 Wn.2d 613, 617, 503 P.2d 736 (1972) and cases cited therein.

Furthermore, where injunctive relief is granted violations of the injunction constituting contempt of court will be punishable pursuant to the criminal or civil contempt statutes (RCW 9.23.010 and RCW 7.20.020 respectively) or pursuant to the court's inherent contempt power. Fines and terms of imprisonment are prescribed by statute for criminal and civil contempt. The court will not be limited in the exercise of this power by the punishments prescribed by statute. The court may use its inherent contempt power to coerce compliance with its lawful order. *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 327, 553 P.2d 442 (1976). Thus, the remedies available to members of the public for injurious strikes by public employees are significant in their deterrent capacity.

We conclude all factors considered, that in view of the delicate balance to be sought in public employee labor relations, and of the legislature's active role in regulating this process, that in the absence of a legislatively created cause of action for damages sustained by third parties, a rule of

judicial restraint regarding recognition of a new cause of action for damages in favor of third parties is the appropriate rule to be followed at this time.

Affirmed.

UTTER, C.J., and WRIGHT and WILLIAMS, JJ., concur.
HICKS, J., concurs in the result.

DOLLIVER, J. (concurring)—I agree with the result, but concur with Parts I and II only. Part III is not necessary and discusses issues we need not determine here.

ROSELLINI and BRACHTENBACH, JJ., and RYAN, J. Pro Tem., concur with DOLLIVER, J.

Reconsideration denied January 16, 1980.