[No. 52576-5. En Banc. September 4, 1986.]

DONALD E. TOOLEY, *Respondent,* v. STEVENSON CO–PLY, INC., *Appellant.*

*Perkins Coie,* by *Richard Ottesen Prentke* and *Jeffrey A. Hollingsworth,* for appellant.

*Dale V. Whitesides* (of *Landerholm, Memovich,*

*Lansverk, Whitesides, Wilkinson, Klossner & Perry)*, for respondent.

PEARSON, J.—The sole issue in this case is whether non-shareholder employees of a company covered by payroll insurance are third party beneficiaries of the insurance contract between the company and the insurer? We hold that such employees are not third party beneficiaries because they are not named as insureds or loss payees in the insurance contract. Accordingly, we reverse the trial court's judgment in respondent's favor.

I

Appellant Stevenson Co–Ply, Inc., is a worker–owned plywood manufacturer, all the shares of which are owned by 150 of its approximately 250 employees. Each worker–owner's share is worth approximately $60,000. Many of the worker–owners have financed their shares and are repaying the balance due at a monthly rate of between $150 and $600.

The company's bylaws provide worker–owners preference in employment. None of the employees, however, whether a shareholder or not, has any express or implied employment contract with the company, and all are susceptible to layoff. During periods of shutdown, the company has continued to make draw payments to the worker–owners, but not to nonshareholder employees.

In 1971, Stevenson Co–Ply obtained insurance coverage for business interruption, providing the company with payment for fixed continuing expenses and anticipated net profit (item 1), together with repayment of ordinary payroll actually expended (item 2). The entity named as the insured under the policy is Stevenson Co–Ply, Inc. The policy provides that, "[u]nless otherwise provided herein, loss, if any, is to be adjusted with and payable to the insured named in this Policy." There is no reference to any other entity, group, or individual as being insured. None of the nonshareholder employees knew this policy existed.

With respect to item 2 coverage, the policy only requires the insurance company to pay the "actual loss sustained" by Stevenson Co–Ply, not to exceed the policy limit. Stevenson, at its option, is entitled either (1) to reimbursement for payment of its "*entire* ordinary payroll" for up to 90 days during the casualty "only to the extent such payroll would have been earned had no loss occurred"; *or* (2) if Stevenson "reduces the daily losses" by reducing the number of people receiving pay, then the 90–day period may be extended to the extent of the coverage limit. Exhibit 1. It was immaterial to the insurance company which option Stevenson Co–Ply took.

The standard policy formula for calculating the item 2 ordinary payroll coverage limit required that Stevenson annually file with the insurance company a form containing the company's "actual ordinary payroll" and the number of working days in the previous year. The "actual" payroll with which the coverage limit was calculated was Stevenson's total payroll expense, including worker–owners, nonshareholder employees, supervisors, administrative personnel, and office personnel.

On January 9, 1980, the roof of Stevenson's manufacturing plant collapsed due to an unprecedented accumulation of snow. The insurer readily conceded that the casualty was a peril insured by the policy. Several meetings were held between representatives of Stevenson and the insurer concerning the mechanics of adjusting the loss and restoring the manufacturing plant, during which time operations necessarily would be suspended.

Early in these discussions, the insurer, consistent with the policy, defined its obligation under the item 2 ordinary payroll provision to be reimbursement up to Stevenson's coverage limit for the sums Stevenson expended in continuing its payroll. The insurer permitted Stevenson to determine to whom its payroll would continue to be paid. The insurer was aware that Stevenson intended to continue the pay of only the worker–owners.

Based on the agreement between Stevenson and its

insurer defining the insurer's obligation under the item 2 ordinary payroll coverage and the agreed rate of prospective reimbursement, Stevenson's board of directors authorized payroll draws to worker–owners who would have been employed, but for the casualty. These payments commenced on January 15, 1980, and continued until the completion of restoration and resumption of full manufacturing operations on June 22, 1980.

The insurer's payment to Stevenson under the item 2 ordinary payroll coverage was deposited in the company's general capital funds, without segregation or placement in any special account. The payroll draws were periodically disbursed to the worker–owners from the company's general capital funds. There was no direct payment to employees from the insurer.

Some nonshareholder employees were employed during the casualty, and they were paid for the time they worked. Nonshareholder employees who were not called in to work during the casualty did not receive any payroll payments from the company.

Respondent filed suit on behalf of a class of nonshareholder employees alleging that the class had been deprived of the proceeds of the insurance collected by Stevenson Co–Ply. The trial court held that the plaintiffs were third–party beneficiaries of the insurance contract between Stevenson Co–Ply and its insurer. The trial court based this conclusion on (1) the fact that the payroll coverage limit in the policy was determined by reference to Stevenson Co–Ply's entire ordinary payroll, including nonshareholders; and (2) the fact that the worker–owners of the company accepted the insurance proceeds. Stevenson Co–Ply appealed to the Court of Appeals, which transferred the case to this court pursuant to RAP 4.3.

II

■ In *Lonsdale v. Chesterfield,* 99 Wn.2d 353, 662 P.2d 385 (1983), this court held that

[t]he creation of a third–party beneficiary contract

requires that the parties intend that the promisor assume a *direct obligation* to the intended beneficiary at the time they enter into the contract.

(Italics ours.) *Lonsdale,* at 361 (quoting *Burke & Thomas, Inc. v. International Org. of Masters,* 92 Wn.2d 762, 767, 600 P.2d 1282 (1979)). As most recently explained in *Postlewait Constr., Inc. v. Great Am. Ins. Cos.,* 106 Wn.2d 96, 99–100, 720 P.2d 805 (1986) (quoting *Lonsdale,* at 362),

both contracting parties must intend that a third party beneficiary contract be created. Furthermore, the test of intent is an objective one; the key is not whether the contracting parties had an altruistic motive or desire to benefit the third party, but rather, "whether performance under the contract would necessarily and directly benefit" that party. The contracting parties' intent is determined by construing the terms of the contract as a whole, in light of the circumstances under which it is made. Where, as here, there are no disputed material facts, the contract will be construed by the court as a matter of law.

(Footnotes omitted.)

In this case, the material facts are basically undisputed, thus permitting this court to construe the terms of the insurance contract as a matter of law. The business interruption policy at issue names Stevenson Co–Ply as the insured, and makes no mention of employees, nonshareholder or otherwise, anywhere in the contract. Thus, under the objective test of intent referred to in *Postlewait,* the insurance contract cannot be construed to support the proposition that performance under the contract, *i.e.,* payment of insurance proceeds, would *necessarily and directly* benefit the nonshareholder employees. On the contrary, in the event of a business interruption, the only party that would be so benefited is Stevenson Co–Ply, the named insured.

Circumstances surrounding the making of the contract clearly reveal that Stevenson Co–Ply's only intent in obtaining coverage was to protect worker–owners, many of whom were financing their shares in the company. The

nonshareholder employees, however, contend that the formula by which the insurer's obligation was to be calculated reveals an intent to assume a direct obligation to or confer a benefit upon nonshareholder employees. The formula provides that ordinary payroll coverage is to be based upon the company's "actual ordinary payroll", which necessarily includes the payroll for nonshareholder employees. Thus, according to these employees, Stevenson Co–Ply intended for them to benefit directly from insurance payments received from the insurer.

This position is untenable. The purpose of payroll coverage is to permit a company to pay its employees despite a catastrophe forcing a shutdown. From the insurer's standpoint, it needs an objective formula to determine the extent of its obligation in the event of such an occurrence. The best and perhaps only way to make this determination is to demand documentation of a company's actual ordinary payroll.

In this case, however, once that determination was made, the insurer clearly had no interest in making the further determination of to whom insurance proceeds would be paid. In fact, the insurance contract explicitly contemplated the possibility that Stevenson Co–Ply could pay some employees and not others in order to extend the 90–day period of coverage. In short, inclusion of nonshareholder employees' pay figures in the pertinent formula reveals no intent on the part of the insured or the insurer to assume a direct obligation to or confer a benefit upon the nonshareholder employees. Accordingly, the nonshareholder employees cannot be considered third party beneficiaries of the business interruption policy.

Such a result comports with this court's decision in *Postlewait,* in which the court held that a third party not named as an insured or as a loss payee in the policy is not a third party beneficiary of an insurance contract, even if in possession of a certificate of insurance. *Postlewait,* at 99. Applying this principle to this case, the nonshareholder employees cannot be. deemed third party beneficiaries

because they were not named as insureds or loss payees within the policy itself. Simply because an insurance policy contains a formula for computation of benefits which makes indirect reference to a third party does not make the third party a beneficiary of the policy.

We reverse the trial court's judgment in favor of the nonshareholder employees.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.