RONEY, Chief Judge: .
 

 In this diversity action for third-party negligence, Patsy Fletcher appeals the district court’s grant of summary judgment to KDI Corporation on the finding that KDI was not vicariously liable to Fletcher because it owed Fletcher no independent common law duty to provide Fletcher with a safe workplace. We affirm.
 

 Fletcher was an employee injured in an explosion of chemicals at a Martin Electronics plant. Martin is a wholly owned subsidiary of KDI. All claims made for the injuries have been resolved, except for the claim of third-party negligence against KDI. The district court found that in order for Fletcher to recover against KDI for unsafe working conditions, she had to show that KDI had assumed a duty to act by affirmatively undertaking to provide a safe working environment at Martin Electronics. The district court granted summary judgment on the conclusion that KDI had assumed no such duty.
 

 Fletcher argues on this appeal that sufficient evidence existed from which a jury could reasonably have found that KDI owed her an independent common law duty of care. The essence of Fletcher’s argument is that KDI as sole stockholder of Martin Electronics is liable through the acts of Louis Matthey and Charles Hart-sock, the only directors of Martin Electronics elected by KDI. She argues that Mat-they and Hartsock affirmatively assumed management responsibilities at Martin Electronics which included the duty to provide Fletcher a safe workplace; that Mat-they and Hartsock knew or should have known of the dangerous working conditions at the Martin Electronics facility and negligently failed to take steps to correct them; and that KDI is vicariously liable as Matthey and Hartsock were working within the limits of their agency relationship with KDI while they served as directors of Martin Electronics.
 

 Relying on
 
 Jaar v. University of Miami,
 
 474 So.2d 239 (Fla. 3d DCA 1985), Fletcher argues that KDI may be held vicariously liable for the negligent acts or omissions of its agents, Matthey and Hartsock, even though those acts occurred while they were performing their duties at Martin Electronics and even if they are personally immune, if the performance of their duties as directors of Martin Electronics was within the scope of their agency relationship with KDI.
 

 Jaar
 
 involved a wrongful death action brought on behalf of a private paying patient at a county hospital. The deceased was admitted to the hospital burn unit for treatment for minor burns and died after being administered an excess amount of anesthetic by three resident doctors in the hospital burn unit. The hospital had contracted with the University of Miami for the operation of its burn unit. Pursuant to this contract, Dr. Ward, an employee and professor at the university’s medical school, served as head of the hospital burn unit, treated patients, and supervised resident doctors. Dr. Ward was the treating physician for Jaar. The estate sued the university, Dr. Ward, the three resident doctors, and the hospital. The trial court, relying on Florida’s sovereign immunity statute, entered judgment completely absolving the university, Dr. Ward, and the resident doctors of liability, and limited the amount of the hospital’s liability. On appeal, the district court of appeals held that Dr. Ward and the resident doctors were immune from suit under Florida’s sovereign immunity law, but held that the immunity enjoyed by Dr. Ward did not extend to the university. 474 So.2d at 244-45.
 

 
 *303
 
 In addressing the university’s liability for the negligent acts of its agent Dr. Ward, the court focused entirely upon the contracts between the university and the hospital and the contract between the university and Dr. Ward. Focusing on the contract between the university and the hospital, the court found that the university had assumed the responsibility to provide medical care to hospital patients and to supervise resident doctors in their treatment of patients. Those responsibilities were performed through Dr. Ward. The court then focused on the contract between the university and Dr. Ward and found, as a matter of law, that Dr. Ward was acting within his agency relationship with the university when the negligent acts occurred.
 

 Several factors distinguish
 
 Jaar
 
 from the present case.
 
 First,
 
 Jaar was a private paying patient at the hospital and not an employee, therefore the Workers’ Compensation Laws did not apply.
 
 Second,
 
 the court based its finding that the university had assumed a direct duty toward Jaar on a clear, detailed, and unambiguous written contract between the university and the hospital.
 
 Third,
 
 the university undertook to perform its duties by placing one of its employees at the hospital who actually treated patients, served as head of the burn unit, and supervised hospital resident doctors in their treatment of patients. There is no showing in this record that either Matthey or Hartsock were involved in the day-to-day operations of Martin Electronics.
 
 Fourth,
 
 the university was a private enterprise which was not entitled to sovereign immunity protections.
 

 Fletcher argues that
 
 Gulfstream Land and Development Corp. v. Wilkerson,
 
 420 So.2d 587 (Fla.1982), authorizes a third-party claim of negligence against a parent corporation, notwithstanding the protection of the workers’ compensation laws.
 
 Gulf-stream
 
 is distinguishable from the present case. In
 
 Gulfstream,
 
 Wilkerson, an employee of Gulfstream’s wholly owned subsidiary, was injured while working for the subsidiary on property owned by Gulf-stream. Wilkerson fell into a hole located on the property and, after receiving workers’ compensation benefits from the subsidiary, filed a negligence suit against Gulf-stream as the property owner. The Florida Supreme Court held that the parent of a wholly owned subsidiary in that case was not immunized by the workers’ compensation laws from third-party tort liability by virtue of its subsidiary having paid out workers’ compensation benefits. The facts in
 
 Gulfstream
 
 did not relate to employment. The court based its holding on the showing of an independent common law duty imposed on the parent as a property owner. By contrast, Fletcher alleges a breach of the duty to provide a safe workplace, a nondelegable duty of the employer.
 
 See Clark v. Better Const. Co., Inc.,
 
 420 So.2d 929, 931 (Fla. 3d DCA 1982);
 
 Zurich Insurance Co. v. Scofi,
 
 366 So.2d 1193 (Fla. 2d DCA),
 
 cert. denied,
 
 378 So.2d 348 (Fla.1979).
 
 See also Love v. Flour Mills of America,
 
 647 F.2d 1058, 1061-63 (10th Cir.1981);
 
 Neal v. Oliver,
 
 438 S.W.2d 313 (Ark.1969). The injury here occurred on property owned by Martin Electronics, not KDI.
 

 Fletcher makes two arguments to support her contention that Matthey and Hart-sock assumed management responsibilities at Martin Electronics.
 
 First,
 
 she points to the fact that Martin Electronics paid an annual management fee to KDI. This fact, Fletcher argues, raises a reasonable inference that Martin Electronics delegated a certain degree of management responsibilities to KDI. The record does not support the contention that Matthey and Hartsock assumed management responsibility to provide a safe workplace. Fletcher’s original complaint was filed on August 30, 1983, and discovery continued until November 7, 1985. It is undisputed that Matthey and Hartsock did not participate in the day-today management of Martin Electronics. It is also clear that Martin Electronics was an independent autonomous corporation which made its own contracts, owned its own property and equipment, maintained separate bank accounts, was liable for its own loans, and maintained its own financial records. Matthey and Hartsock, as directors of Martin Electronics, appointed the president and general manager for the corporation and delegated management of the
 
 *304
 
 corporation to him. Martin Electronic’s president and general manager hired the individual who had responsibility to supervise safety at the facility. Outside of electing the directors of the corporation, a right derived from stock ownership, Fletcher has established no services provided to Martin Electronics by KDI and has not identified any management employees who were also employees of KDI.
 

 Fletcher’s second argument is that Mat-they and Hartsock assumed a high duty of fiduciary care and diligence, as a matter of law, by accepting their positions as directors of Martin Electronics.
 
 Skinner v. Hulsey,
 
 103 Fla. 713, 138 So. 769 (1931). Fletcher argues that no further act was required to create a duty to Fletcher. This argument is also not helpful. As noted, the duty urged here, to provide a safe workplace, is a nondelegable duty of an employer. Matthey and Hartsock, as directors of Martin Electronics, assumed no duty directly to Fletcher simply by accepting their positions as directors. KDI, as a shareholder owner, had no duty to furnish a place for Fletcher to work — safe or otherwise,
 
 Neal v. Oliver,
 
 438 S.W.2d at 319, and Fletcher has failed to show conduct sufficient to create a legal duty.
 
 See Boggs v. Blue Diamond Coal Company,
 
 590 F.2d 655 (6th Cir.1979);
 
 Heinrich v. Goodyear Tire and Rubber Company,
 
 532 F.Supp. 1348 (D.Md.1982);
 
 Muniz v. National Can Corporation,
 
 737 F.2d 145 (1st Cir.1984).
 

 Finally, Fletcher argues that a jury question was presented with respect to whether Matthey and Hartsock were acting within the course and scope of their agency relationship with KDI when they performed their duties as directors of Martin Electronics. The question need not be addressed because even if they were acting as agents of KDI they owed no independent duty to Fletcher.
 

 AFFIRMED.