[No. 71115-1. En Banc.]
Argued March 19, 2002. Decided June 6, 2002.

GEORGE A. MINTON, *Respondent*, v. RALSTON PURINA COMPANY, ET AL., PETITIONERS.

*James B. King* and *Christopher J. Kerley* (of *Keefe, King & Bowman, P.S.*), for petitioners.

*Eugene G. Schuster* and *David E. Williams* (of *Critchlow, Williams & Schuster*), for respondent.

BRIDGE, J. — George Minton suffered severe head and bodily injuries when a condensate collector exploded at the bakery where he worked. Minton sued his current employer Interstate Brands (Interstate), Continental Baking Company (Continental), the company that installed the equipment that allegedly injured him and later merged with Interstate, and the parent corporation Ralston Purina Company (Ralston) for tort damages. We are asked to determine whether Continental and Interstate are immune from suit, pursuant to the Industrial Insurance Act (Act), Title 51 RCW, or otherwise, by an employee who suffers injuries in the workplace. We are also asked to determine whether Ralston is subject to liability under the RESTATEMENT (SECOND) OF TORTS § 388 (1965) and *DuVon v. Rockwell International*, 116 Wn.2d 749, 807 P.2d 876 (1991), even though a parent company generally will not be held liable for the

torts of its wholly owned subsidiaries absent evidence that would justify piercing the corporate veil. We hold that workers' compensation benefits provide the sole remedy for the employee, consistent with the Act; that *DuVon* is factually distinguishable from the case presented; and that the evidence does not justify piercing the corporate veil. Accordingly, we reverse the trial court's denial of the defendants' motions for summary judgment.

I

Minton was injured in 1998 when a condensation tank exploded at his workplace, Interstate's Spokane bakery facility. The allegedly defective equipment was installed in 1985 when the bakery was owned and operated by Continental. At the time the equipment was installed, Continental was a wholly owned subsidiary corporation of Ralston. Interstate purchased Continental from Ralston on July 22, 1995. On July 24, 1995, Interstate merged Continental into itself with Interstate surviving as the sole corporate entity. Interstate, as Minton's employer and as a self-insurer under the Act, has paid Minton workers' compensation benefits since October 18, 1998, the day of the accident.

Minton brought an action against Interstate, Continental and Ralston seeking recovery for his injuries. The defendants moved for summary judgment asserting that Interstate and Continental were immune from liability under the provisions of the Act, RCW 51.32.010 and RCW 51-.04.010, and that Ralston, as a parent corporation, was not liable to Minton for the torts of its wholly owned subsidiary. The superior court denied the defendants' motions and its subsequent motion for reconsideration, but granted the defendants' request that the orders be certified pursuant to RAP 2.3(b).[1] Interstate, Continental and Ralston then sought discretionary review by this court.

---

[1] RAP 2.3(b) provides that a party may seek discretionary review of a superior court order if the superior court has committed an obvious error which would render further proceedings useless; committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the

The defendants (petitioners herein) argue that the superior court erred in denying their motions for summary judgment because Minton's claims against Interstate and Continental are barred by the Act, and that Ralston cannot be liable for the torts of its wholly owned subsidiary. Minton responds that Interstate is subject to liability in its capacity as the successor to Continental's and Ralston's liabilities. Minton further argues that Continental and Ralston are liable as sellers of inherently dangerous products pursuant to the RESTATEMENT (SECOND) OF TORTS, *supra*, and *DuVon*.

This court reviews the denial of a summary judgment motion de novo, interpreting all facts in the light most favorable to the nonmoving party. *Marquis v. City of Spokane*, 130 Wn.2d 97, 104-05, 922 P.2d 43 (1996). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 105. Having reviewed the relevant facts and in light of the issues presented, we determine that there are no genuine issues of material fact and summary judgment as to each petitioner is appropriate in this case.

## II

### Interstate's Liability

■■ The Act provides the exclusive remedy against an employer for an employee who is injured in the workplace. RCW 51.04.010, 51.32.010. Employers who are self-insured under the Act also obtain the same immunity. RCW 51.32.010; *Manor v. Nestle Food Co.*, 131 Wn.2d 439, 444, 932 P.2d 628 (1997). In addition, a parent company and its subsidiaries will be treated as one entity for the purposes of immunity under the Act. *Id.* at 456 (upholding former WAC

---

freedom of a party to act; or has departed from the accepted and usual course of judicial proceedings.

296-15-023 (1993), *repealed by* St. Reg. 99-23-107 (Nov. 17, 1999)).[2]

▮ The Act was enacted to guarantee certain relief for employees injured within the scope of their employment. RCW 51.04.010. The insurance is based upon a compromise between employees and employers, ensuring the worker receives speedy relief, while granting employers immunity from common law responsibility. *Meyer v. Burger King Corp.*, 144 Wn.2d 160, 164, 26 P.3d 925 (2001); *Favor v. Dep't of Labor & Indus.*, 53 Wn.2d 698, 703, 336 P.2d 382 (1959). In exchange for such relief, the employee forfeits certain rights to pursue alternative tort or other remedies. *West v. Zeibell*, 87 Wn.2d 198, 201, 550 P.2d 522 (1976). The Act clearly states this intent:

> The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

RCW 51.04.010. As a result, employees may receive less than full tort damages in exchange for the expense and uncertainty of litigation. *See generally McIndoe v. Dep't of Labor & Indus.*, 144 Wn.2d 252, 26 P.3d 903 (2001); *Frost v. Dep't of Labor & Indus.*, 90 Wn. App. 627, 631, 954 P.2d 1340 (1998).

In this case, Interstate qualified as a self-insurer in accordance with the provisions of the Act. Ch. 51.14 RCW. As a self-insurer, Interstate was obligated to pay Minton workers' compensation for the injuries he suffered incident to his employment, and Interstate has been paying these

[2] Former WAC 296-15-023 provides that a certificate of self-insurance issued to a company includes all subsidiaries or divisions thereof and that all such entities are considered one employer for purposes of the Act.

benefits since the day the accident occurred. RCW 51-.04.010. For the policy reasons previously cited in favor of promulgating the Act and because Minton's accident was not an intentional tort, nor does it fall under another exception, Minton has lost the right to pursue alternative tort remedies. *See* RCW 51.24.020, .040, .060(1)(c), .070, 51.12.100(4). The Legislature's stated compromise in granting Minton workers' compensation supports the determination that he relinquishes alternative tort remedies against Interstate.

■ Although there is no "direct" cause of action against Interstate in light of the compromise presented by the Act, Minton argues that Interstate still owes him additional compensation because it has assumed Continental's liabilities. This court addressed questions similar to those presented here in *Corr v. Willamette Industries, Inc.*, 105 Wn.2d 217, 713 P.2d 92 (1986), and *DuVon*. We find *Corr* factually analogous and controlling.

In *Corr*, Willamette Industries, Inc. (Willamette) merged with Corco, Inc. in 1977. Incidental to the merger, Willamette acquired two bulk bin compressors designed and manufactured by Corco. Corco had never sold or otherwise put the compressors into the stream of commerce. The plaintiff, Corr, was employed at Western Kraft Paper Group, a wholly owned subsidiary of Willamette. In 1980, Corr was injured while cleaning one of the compressors. He filed for and received workers' compensation benefits. Corr subsequently filed a products liability action against Willamette claiming that it should be subject to liability under the dual persona doctrine. The dual persona doctrine provides that an employer may be subject to a tort suit by an employee if, and only if, the employer " 'possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.' "[3] *Id.* at 220-21 (quoting 2A ARTHUR LARSON, WORKMEN'S COMPENSATION § 72.81 (1983)).

---

[3] *See, e.g., Evans v. Thompson*, 124 Wn.2d 435, 879 P.2d 938 (1994) (holding legal entity status presented question of fact for jury and dual persona doctrine

This court rejected Corr's claim. We held that neither the dual capacity nor the dual persona doctrine would overcome the exclusive remedy under the Act in the factual scenario presented. In holding that the Act provided the exclusive remedy, we reasoned that Corco could not have been liable as a third party prior to the merger because it had not placed the compressors into the stream of commerce and Corr had not been a Corco employee. Therefore, we concluded, Willamette should not be liable solely because of the merger.

In *DuVon*, meanwhile, the defendant, Rockwell International (Rockwell), was the general contractor at Hanford Nuclear Reservation (Hanford). During its contract, Rockwell designed and constructed equipment for the operation including portable exhausters. The plaintiff was an employee while Rockwell held the contract. In 1987, Westinghouse Hanford Company (Westinghouse) replaced Rockwell as the prime contractor and took possession of all the equipment used by Rockwell at Hanford. The plaintiff then became an employee of Westinghouse. Five days after the plaintiff became an employee of Westinghouse, he was injured in an accident involving one of the portable exhausters. He pursued an industrial insurance claim against Westinghouse and brought a separate action against Rockwell as a third party pursuant to RCW 51.24.030(1).[4]

Rockwell argued that under *Corr*, it should not be liable for DuVon's injuries because as DuVon's employer, it could not have been liable prior to Westinghouse's assumption of the contract. We rejected Rockwell's argument, holding that Rockwell was a third party for purposes of RCW 51.24-

may be invoked when defendants owned property as individuals and as legal entity completely separate from corporation).

[4] RCW 51.24.030(1) states:

If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person.

.030(1) and that Rockwell owed a duty to the plaintiff. In so holding, we limited *Corr* to situations involving mergers and held that it did not apply to situations involving transfers or sales of property. "The finding of no duty in *Corr* was therefore largely based on the fact that the transferor, Corco, and transferee, Willamette, became one and the same as of the moment of transfer." *DuVon*, 116 Wn.2d at 759-60.

This distinction between *Corr* and *DuVon* is significant. While the factual scenarios appear similar in both cases, the key separating factor arises from the fact that in *Corr* the company that merged would assume the liabilities of the nonsurviving company, hence carrying forth and fulfilling the purposes and obligations of the Act. In *DuVon*, by contrast, the two companies did not merge and the subsequent contractor would not assume the same liabilities as its contractual predecessor. Thus, the predecessor now assumes new liabilities as it has been relieved of its previous obligations. In *Corr*, however, the liabilities have become one and the same.

The petitioners argue that because Continental, as Minton's employer, could not have been liable for Minton's injuries before the merger, under *Corr*, the surviving corporation should similarly not be liable. Minton responds that Interstate is subject to liability in its capacity as the successor to Continental's liabilities. Resp't's Answer to Pet. for Review at 6 (citing RCW 23B.11.100(3), which provides that when a merger occurs, "[t]he surviving corporation has all the liabilities of each corporation . . . to the merger"). Minton attempts to distinguish this case from *Corr* by arguing that the merger with Continental occurred after Interstate's purchase of Continental. However, Interstate, as the parent corporation, would be immune from suit by a Continental employee. *See Manor*, 131 Wn.2d at 455-56 (stating when self-insurer is purchased by another firm, parent agrees to stand in shoes of subsidiary corporation for subsidiary's industrial insurance obligations). Furthermore, the two-day lag between sale and merger is irrelevant

because Continental and Interstate did merge in fact, and the latter assumed the liabilities of the former.

Therefore, similar to the factual pattern in *Corr*, but not *DuVon*, Interstate and Continental's liabilities are now synonymous. Continental's liabilities prior to the merger would have been limited to workers' compensation benefits under the Act. Similarly, Interstate's liabilities are limited to the exclusive remedy provided under the Act, namely workers' compensation benefits. As Continental merged into Interstate, Interstate assumed the burden of Continental's liabilities, which would include compensation for a work-related accident in accordance with the Act. Interstate has fulfilled this obligation. Accordingly, we hold that there are no genuine issues of material fact regarding Interstate's liability, and summary judgment in its favor is appropriate.

### Continental's Liability

██ Minton argues that Continental should be subject to liability under *DuVon*[5] and the RESTATEMENT (SECOND) OF TORTS, *supra*,[6] as the seller of a potentially dangerous and defective product.[7] The petitioners assert that Continental cannot be independently subject to liability because it ceased to exist prior to the accident. When two companies merge, the surviving company usually assumes the liabilities of both companies. *Niven v. E.J. Bartells Co.*, 97 Wn. App. 507, 510, 983 P.2d 1193 (1999) (citing *Hall v. Armstrong*

---

[5] For an analysis of Continental's liability under *DuVon*, *see supra* section on Interstate's Liability at 389-94.

[6] Section 388 states in part,

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied . . . .

[7] In this context, we find that the Act, *DuVon* and *Corr* limit any potential liability that may be implicated by principles from the *Restatement*, that have been recognized by this court, and hence they and not the *Restatement* control our analysis here.

*Cork, Inc.*, 103 Wn.2d 258, 261-62, 692 P.2d 787 (1984)). Minton rebuts the petitioners' assertion by citing *United States Acme Granite & Tile Co. v. F.D. Rich Co.*, 437 F.2d 549 (9th Cir. 1970).

Applying Washington law, the Ninth Circuit held in *Acme* that "the dissolution of a corporate entity does not necessarily relieve the corporation's assets or the stockholders who receive them from liability to its creditors." *Id.* at 552. This statement does not independently support a newfound liability against Continental, however. It merely supports the accepted legal proposition that a corporation's liabilities do not disappear entirely when it ceases to exist. *Morgan County v. Allen*, 103 U.S. (13 Otto) 498, 510, 26 L. Ed. 498 (1880). In this instance, Interstate has assumed Continental's liabilities in its merger. To reiterate, Continental's liability was to pay workers' compensation, which Interstate has accepted.[8]

■ Minton also contends that Continental and Ralston are liable on the basis of a premerger contractual transfer warranty "as to the dependable utility of what, actually, was a *highly* unreliable device." Resp't Br. at 12. Minton argues that Continental and Ralston assumed a duty to Minton pursuant to a sale and purchase agreement (Agreement) with Interstate. Resp't's Answer to Pet. for Review at 9 (citing *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 334, 582 P.2d 500 (1978) ("an affirmative duty assumed by contract may create a liability to persons not party to the contract, where failure to properly perform the duty results in injury to them")). Minton asserts that section 3.25 of the Agreement with Interstate created an affirmative duty. Section 3.25 states in pertinent part, "all such property is in reasonably good operating condition and repair, ordinary wear and tear excepted, and is suitable for the purposes for which it is used." *Id.* at 8.

---

[8] Minton conceded at oral argument that had the accident occurred while he was employed by Continental, Continental's obligation would have been limited to paying workers' compensation benefits under the Act.

Continental and Ralston respond that Minton was not a third party beneficiary to the contract and therefore no duty arose. Pet. for Review at 13 (citing *Burke & Thomas, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 92 Wn.2d 762, 767, 600 P.2d 1282 (1979) (holding that "creation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract")). Ralston further asserts that the Agreement addresses the issue of third party beneficiaries and "in plain language specifically states that any warranties made by the seller in the agreement are made to the buyer alone and that the agreement is not intended to confer any rights or remedies to non-parties." *Id.* at 13.

The paragraph in the Agreement relative to third party beneficiaries states:

> This Agreement is not intended to confer upon any non-party any rights or remedies hereunder. Any representation or warranty made by Sellers in this Agreement is made to buyers alone, and solely for the purpose of selling the CBC stock, and Sellers have not made, and make no representation or warranty to any person other than Buyers. Any representation or warranty made by Buyers in this Agreement is made to Sellers alone, and solely for the purpose of purchasing the CBC stock, and the Buyers have not made, and make no representation or warranty to any person other than the Sellers.

Br. of Pet'rs at 12.

A manufacturer or seller who places a product into the stream of commerce accompanied by statements regarding the product to the ultimate consumer, can incur warranty liability to an injured customer. *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 727 P.2d 655 (1986). However, Washington courts have recognized that a party must be intended as a third party beneficiary to benefit from a contract. *Burke*, 92 Wn.2d at 767. An employee is not automatically considered a third party beneficiary covered by an employer's contract. *Tooley v. Stevenson Co-Ply, Inc.*, 106 Wn.2d 626, 627, 724 P.2d 368 (1986) (holding nonshare-

holder employees of company covered by payroll insurance were not third party beneficiaries of insurance contract because they were not named in insurance contract). By the clear language of the Agreement, Minton was not an intended third party beneficiary because the clause delineating third party liability specifically limited recovery to the "Seller" and "Buyer." Additionally, the warranty expired after one year, so it is inapposite even if Minton were a third party beneficiary. Accordingly, we hold that there are no genuine issues of material fact regarding Continental's liability, and summary judgment in its favor is appropriate.

## Ralston's Liability

While RCW 51.04.010 establishes the general liability for self-insured employers, RCW 51.24.030 carves out an exception for an action against a third party.[9] Applying this third party exception, Minton argues that Continental and Ralston are also subject to liability as the owners-sellers of defective equipment under *DuVon* and section 388 of the *Restatement*. Relying on *Fletcher v. Martin Electronics, Inc.*, 825 F.2d 301 (11th Cir. 1987), Ralston responds that corporations do not owe employees of wholly owned subsidiaries an independent duty to provide safe workplaces absent evidence which would pierce the corporate veil. The *Fletcher* court held that the directors and shareholders of the parent corporation owed no independent duty to provide an employee of the wholly owned subsidiary with a safe workplace. *Id.* at 304.

This proposition has been upheld by the Supreme Court when the United States brought an action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601-9675, against the parent corporations of chemical manufacturers for the costs of cleaning up industrial waste generated by a chemical plant. *United States v. Bestfoods*, 524

---

[9] *See* n.4 *supra.*

U.S. 51, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998). The Court noted, "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Id.* at 61 (quoting William O. Douglas & Carrol M. Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 1, 193 (1929)).

A parent corporation may be liable when state law supports piercing the corporate veil. *Id.* at 55. To pierce the corporate veil and find a parent corporation liable, the party seeking relief must show that there is an overt intention by the corporation to disregard the corporate entity in order to avoid a duty owed to the party seeking to invoke the doctrine. *Morgan v. Burks*, 93 Wn.2d 580, 587, 611 P.2d 751 (1980); *Anderson v. Section 11, Inc.*, 28 Wn. App. 814, 626 P.2d 1027 (1981). Generally, a party must show that the corporation manipulated the entities in order to avoid the legal duty. *Peterick v. State*, 22 Wn. App. 163, 185, 589 P.2d 250 (1977) (per curiam), *overruled on other grounds by Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 719-21, 709 P.2d 793 (1985).

Relying on *Deno v. Standard Furniture Co.*, 190 Wash. 1, 66 P.2d 1158 (1937), Minton argues that whether the corporate entity should be disregarded is a question of fact for the jury. However, the holding in *Deno* was more limited, finding only that the facts of that case were such as to make it a proper question for the jury. *Id.* at 9. Contrary to Minton's assertion, therefore, summary judgment in favor of the corporation may be appropriate if the plaintiff fails to show evidence of "either the requisite manipulation, or the perpetration of a fraud on plaintiffs." *Peterick*, 22 Wn. App. at 185.

Minton asserts that this court should pierce the corporate veil because Continental demonstrated an intent to disregard the corporate identity and was, in fact, only an instrumentality of Ralston. In support of this assertion, Minton points to the fact that Continental labeled itself a

"subsidiary" of Ralston on its letterhead and had its headquarters at the same location as Ralston.

However, this court has held that "[m]ere common ownership of stock, the same officers, employees, etc., does not justify disregarding the separate corporate identities unless a fraud is being worked upon a third person." *Rena-Ware Distribs., Inc. v. State*, 77 Wn.2d 514, 518, 463 P.2d 622 (1970); *see also One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc.*, 108 Wn. App. 330, 350, 30 P.3d 504, 34 P.3d 834 (2001) (stating Washington courts "will not imply an overt intent to disregard the corporate form from the presence of common directors, shareholders, or a common business address"), *review granted*, 146 Wn.2d 1008 (2002). Because Minton has not asserted that Continental and Ralston were attempting to perpetrate a fraud on a third party by maintaining separate identities, the fact that Continental and Ralston had a common headquarters and that Continental held itself out as a subsidiary of Ralston does not justify disregarding the corporate entity. Accordingly, we hold that there are no genuine issues of material fact regarding Ralston-Purina's liability and summary judgment in its favor is appropriate.

## III

Interstate and Continental are immune from liability to Minton in accordance with the provisions of the Industrial Insurance Act. Further, although Interstate has assumed Continental's liabilities, Minton would have been limited to the same recovery against Continental—workers' compensation benefits under the Act. Minton's recovery against Ralston is barred because a parent corporation is not liable for the torts committed by its wholly owned subsidiary absent a showing of an intentional disregard for the corporate entity or an intentional fraud. Minton has failed to make this showing. We reverse the trial court's denial of summary judgment against Interstate, Continental and

Ralston and remand for entry of judgment in accordance with this opinion.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, and OWENS, JJ., concur.

Reconsideration denied July 30, 2002.