IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LISA BUHR, | ) | |
| | ) | No. 30164-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | OPINION PUBLISHED |
| STEWART TITLE OF SPOKANE, LLC; | ) | IN PART |
| and STEWART TITLE COMPANY, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Lisa Buhr appeals the summary judgment dismissal of her disability discrimination claims against Stewart Title Company (Stewart Co.), a 51 percent shareholder of her former employer, Stewart Title of Spokane LLC (Stewart Spokane). She argues that the trial court abused its discretion in denying her motion to extend the discovery cutoff and later erred in dismissing her claims. We find no error or abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

In October 2009, Lisa Buhr sued her former employer, Stewart Spokane, and its 51 percent shareholder, Stewart Co., for disability discrimination and related claims. A case schedule order was issued in early January 2010, setting January 10, 2011 as the

discovery cutoff; March 14, 2011 as the trial date; and December 20, 2010 as the last date for filing motions to change the trial date.

On December 22, 2010, Ms. Buhr filed a motion to continue the trial date. She attributed her tardiness in filing the motion to her understanding that the parties had agreed to jointly request a continuance of all deadlines provided by the case schedule order, only to learn on the afternoon of December 20 (when she had planned to file the joint motion) that the defendants claimed a different understanding. Her motion was clear that the defendants did not agree (or, from her perspective, no longer agreed) to the continuance she was requesting.

On the day her motion was to be heard, however, the parties filed a joint motion to continue the trial date. This second motion, signed by attorneys for all parties, stated that it was based upon a concurrent declaration of Stewart Co.'s and Stewart Spokane's lawyer. His declaration explained that by agreement of the parties, depositions for material witnesses were set for agreed dates of February 23 and 24 and otherwise, "[p]er [the parties'] agreement,"

> the parties agreed to an August 2011 trial date, and the issuance of a new Case Scheduling Order, provided, however, the following case scheduling deadlines are closed: (a) Last Date for Joinder of Additional Parties, Amendment of Claims or Defenses; (b) Plaintiff's Disclosure of Lay and Expert Witnesses; (c) Defendant's Disclosure of Lay and Expert Witnesses; (d) Disclosure of Plaintiff Rebuttal Witnesses; (e) Disclosure of Defendant Rebuttal Witnesses; (f) Last Date for Filing: Motions to Change Trial Date, Note for Arbitration, Jury Demand; and (g) Discovery Cutoff.

Clerk's Papers (CP) at 83.

When the motion was heard, the lead lawyer appearing for Stewart Co. reiterated that "we were not going to be extending deadlines to amend pleadings or add parties or discovery probably, that we were just going to complete the discovery that had been noted up until that point in time and then at that point the case would close for discovery purposes and we would be dealing with mediating, dispositive motions, and then ultimately trial." Report of Proceedings (RP) (Feb. 11, 2011) at 5-6. When it was her turn to speak, Ms. Buhr's lawyer said that she had a different understanding from her negotiation with other lawyers for the defendants (the defendants were represented by several local and out-of-state lawyers). She characterized the parties as having agreed to extend the deadline for discovery to whatever date would be provided by a newly generated case schedule order, explaining that "obviously one of the problems that we have is the completion of discovery." *Id.* at 6.

The trial court construed the motion and supporting declaration to have the meaning asserted by Stewart Co. Because Stewart Co.'s lead lawyer insisted that his clients had not contemplated a continuance of the discovery cutoff and "[t]his is the first I've actually heard of any indication that there may be additional depositions beyond the initial ones scheduled. . . . I'm a little bit at a loss for how to respond," the trial court granted the agreed continuance of the trial date with other deadlines remaining in place.

*Id.* at 8. It stated that it would entertain a further motion from Ms. Buhr if, following the February depositions, she still wished to extend the discovery cutoff.

Ms. Buhr filed a further motion to set a new discovery cutoff in March. Her motion represented that the depositions conducted in February revealed a need for further discovery, specifically identifying three subject matters: complete production of alarm system records she had requested (Stewart Spokane's stated reason for discharging Ms. Buhr was that she had falsified a time card, a conclusion it based on alarm system records); evidence that Stewart Spokane had paid Ms. Buhr for the hours reported on her time card on the day she was discharged; employee time cards for other employees bearing on whether its stated policy for recording time was consistently followed; and a CR 30(b)(6) deposition needed to determine "the liability and/or connection of Stewart Title Guarantee Company, i.e., the national office as a proper party defendant in this case." CP at 91-93. Stewart Co. and Stewart Spokane resisted the motion, claiming that some of the discovery had already been provided and that Ms. Buhr had previously agreed to "close" most case schedule deadlines, including the discovery cutoff, in exchange for its agreement to continue the trial date.

In the hearing on her motion, Ms. Buhr again contended that she had a different understanding of the parties' agreement in February to "close" the discovery cutoff. She maintained that "closing" the case schedule deadlines only meant that the deadlines provided by a new case schedule order would be final. The court rejected her explanation

4

of the motion and supporting declaration, stating, "it is clear that the cutoffs were established." RP (Apr. 15, 2011) at 33. Other than ordering Stewart Spokane to produce employee identification information needed by Ms. Buhr to make use of alarm records the company had earlier produced, the court denied Ms. Buhr's motion. *Id.* at 35.

In June, Stewart Co. moved for summary judgment, arguing that it had no employment relationship with Ms. Buhr and that she had alleged no legal basis on which it could be held liable as Stewart Spokane's 51 percent parent. The trial court granted summary judgment and dismissed her claims against Stewart Co. Its order granting summary judgment included a finding that there was no just reason for delay and expressly directed entry of judgment. Ms. Buhr timely appealed.

## ANALYSIS

Ms. Buhr makes two assignments of error. The first is that the trial court abused its discretion in "improperly terminating Ms. Buhr's entitlement to conduct meaningful discovery seven months before the trial date." Br. of Appellant at i. The assignment requires reframing. Ms. Buhr was free to conduct discovery through the January 10 discovery cutoff imposed by the original case schedule order; it was Ms. Buhr who sought a reprieve from the cutoff, identifying her March motion, appropriately, as one to "allow *additional* discovery and *reset* discovery cutoff." CP at 90 (emphasis added) (boldface and capitalization omitted). We analyze her first assignment of error as

5

asserting an abuse of discretion by the trial court in refusing to extend the discovery cutoff.

The second assignment of error is that the trial court erred in dismissing her claims against Stewart Co.

We address the assignments of error in turn.

I

As a threshold matter, Stewart Co. argues that Ms. Buhr failed to appeal the trial court's denial of her March motion requesting an extension of time for discovery and we therefore should not consider it. But we will review a trial court order or ruling not designated in the notice of appeal, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice and (2) the order is entered, or the ruling is made, before the appellate court accepts review. RAP 2.4(b). Ms. Buhr argues that the court's refusal to extend discovery prejudicially affected its summary judgment decision. She may challenge the refusal to extend discovery as a basis for challenging dismissal of her claims against Stewart Co.

A second threshold argument raised by Stewart Co. is that when a party needs additional discovery to respond to a motion for summary judgment, the only proper way to request that evidence is through a motion complying with CR 56(f). Here, though, the trial court had already denied Ms. Buhr's request for any further discovery by the time Stewart Co.'s motion for summary judgment was filed. While CR 56(f) ordinarily

prescribes the method and standard for continuing a summary judgment motion for further discovery, Ms. Buhr reasonably concluded that in this case it was likely pointless for her to seek relief under CR 56(f); filing such a motion might have subjected her to a finding of contempt. It is sufficient for her to challenge the order refusing to extend the discovery cutoff.

We turn to the merits of Ms. Buhr's argument and the basis for and appropriate standard for extending a discovery deadline. CR 26(f) provides that at any time after commencement of an action the court may direct the parties to appear for a conference on discovery. The court may combine a court-convened conference on discovery with a pretrial conference authorized by CR 16. CR 26(f). Following such a conference, the rule contemplates a court order establishing a plan and schedule for discovery. A schedule for discovery may be altered or amended "whenever justice so requires." CR 26(f).

Local rules of the Spokane County Superior Court provide for a status conference at a time set by the original case assignment notice, which attorneys of record and any pro se parties must attend. LAR 0.4.1(d). A case schedule order is issued at the status conference to "set the time period between filing and trial and the scheduled events and deadlines for that type of case, as determined to be appropriate by the assigned court department, after consultation with counsel." *Id.* The court's standard case schedule order provides, "IT IS ORDERED that all parties comply with the foregoing schedule

pursuant to Local Rules 0.4.1 and 16." *See* CP at 2014. Among the deadlines addressed by the court's case schedule order for civil cases is the discovery cutoff. Noncompliance with the case schedule order may be sanctioned by the court on its own initiative or on the motion of an affected party. LAR 0.4.1(g)(1), (2).

Ms. Buhr argues that the standard by which the trial court should have considered her request to extend discovery—and by which we should review its refusal—is dictated by cases addressing a plaintiff's "right of access to the courts . . . includ[ing] the right of discovery authorized by the civil rules, subject to the limitations contained therein," *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991), or cases limiting the trial court's discretion to impose harsh remedies, such as dismissing claims or excluding testimony, in order to remedy a discovery violation. *Blair v. TA-Seattle E. No. 176*, 171 Wn.2d 342, 348, 254 P.3d 797 (2011); *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997). Neither line of cases is apposite.

The "right of discovery . . . subject to the limitations [of the civil rules]" is not at issue. The case schedule order afforded Ms. Buhr a full year to conduct discovery—and even it was filed three months after she had commenced her action. The trial court never limited her right to engage in discovery, it simply did not extend it.

This is also not a case like *Blair* or *Burnet*, where a plaintiff has identified material witnesses and is prepared to present their testimony at trial, thereby requiring the court to weigh whether a discovery violation warrants the harsh remedy of depriving the jury of

material evidence. Ms. Buhr only hoped that further discovery would produce material evidence supporting her claims.

This is more like cases in which a party requests a continuance of the trial date due to a claimed inability to prepare for trial. Whether a motion for such a continuance should be granted or denied is a matter of discretion with the trial court, reviewable on appeal for manifest abuse of discretion. *Trummel v. Mitchell*, 156 Wn.2d 653, 131 P.3d 305 (2006). In exercising its discretion,

> a court may properly consider the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court.

*Id.* at 670-71. In the context of a request to continue the discovery cutoff, a court may also properly consider the purpose of a discovery cutoff date, which is "to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). A court abuses its discretion when its decision is based upon a ground, or to an extent, clearly untenable or manifestly unreasonable. *Trummel*, 156 Wn.2d at 671.

Here, the trial court considered the fact that Stewart Co. agreed to a five-month continuance of trial based on Ms. Buhr's acceptance of other terms recounted in its

9

lawyer's February declaration, including that "the following case scheduling deadlines are closed: . . . (g) Discovery Cutoff." While Ms. Buhr claims to have had a different understanding of what "closed" meant, the trial court was in a better position than we to decide between the parties' conflicting characterizations. We will not second-guess its reading of the joint motion to continue trial and its supporting declaration, which is reasonable. The trial court was aware that Ms. Buhr and Stewart Spokane had been through administrative proceedings before a lawsuit was filed and that Ms. Buhr obtained some relevant Stewart Spokane documents through those proceedings. Finally, while Ms. Buhr claimed that discovery was made difficult by several substitutions of counsel for the defendants and the demands of her own lawyer's schedule, she did not provide examples of diligence in requesting earlier discovery that was ignored or frustrated by the defendants. In identifying the additional discovery that she viewed as necessary, only her request for a CR 30(b)(6) deposition was arguably relevant to the dismissal of Stewart Co. that is the subject of this appeal, and even that request did not relate to Stewart Co. but was with a view to asserting a new claim against a different affiliate, Stewart Title Guaranty.

Ms. Buhr has not demonstrated a manifest abuse of discretion by the trial court in refusing to extend discovery.

For reasons discussed above and in the unpublished portion of this decision, dismissal of Ms. Buhr's claims against Stewart Co. is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

II

Ms. Buhr's second assignment of error is to the dismissal of her claim against Stewart Co. In addition to arguing that she presented evidence that Stewart Co. was Ms. Buhr's employer, she argues that the definition of "employer" in the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, captures a parent corporation that acts in its subsidiary's interest, which she claims Stewart Co. did here. Finally, and alternatively, she suggests that we should apply the federal standard for "integrated enterprises" to hold Stewart Co. jointly liable for any discrimination by its subsidiary.

On an appeal from summary judgment, the standard of review is de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)). Summary judgment will be upheld if the pleadings, affidavits, answers to interrogatories, admissions, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Hisle*, 151 Wn.2d at 860-61. We view all facts and reasonable inferences from the facts in a light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

11

The moving party bears the initial burden of proving that there is no genuine issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If it meets its initial burden, the nonmoving party must present evidence that material facts are in dispute. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). The nonmoving party cannot rely on mere allegations, speculation, or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). If it fails to present evidence that material factual issues remain, then summary judgment is proper. *Atherton*, 115 Wn.2d at 516.

The WLAD forbids discrimination by "any employer." RCW 49.60.030(1)(a), .180. It does not define "employee" or "employer" other than to provide that "employee" does not include an individual employed by a parent, spouse, child, or in domestic service of a person and to provide that "'employer' includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons." RCW 49.60.040(10), (11); *DeWater v. State*, 130 Wn.2d 128, 921 P.2d 1059 (1996). The statutory definition of "employer" enlarges the common law meaning of "employer" to include other persons acting in the employer's interest and at the same time narrows it to exclude small businesses. Because it does not define "employer" further, we presume the legislature intended the word to mean what it did at common law, as modified by the statute. *Cf. Marquis v. City of Spokane*, 130 Wn.2d 97, 110, 922 P.2d 43 (1996) (since

12

term "employee" is not further defined, "we therefore presume the legislature intended the word to mean what it did at common law, as limited by the statute").

Regulations promulgated by the Human Rights Commission rely generally on common law principles to identify employment relationships. *See* WAC 162-16-230. The identification of who controlled the work to be performed by Ms. Buhr, who paid the consideration for her work, and who treated her as an employee for tax purposes are key indications of who was her common law employer. *Cf. Anaya v. Graham*, 89 Wn. App. 588, 593, 950 P.2d 16 (1998) (looking to employer's payroll to determine whether an employment relationship existed where the number of persons employed is in dispute).

Turning to the WLAD's extension of employer status to persons "acting in the interest of an employer, directly or indirectly" as employers, Washington decisions look to such persons' involvement in the employment policy or decisions that result in discrimination and hold them liable for their own discriminatory acts. *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 358, 361, 20 P.3d 921 (2001) (holding, that individual supervisor, "along with their employers, may be held liable for their discriminatory acts"). The WLAD has not been construed to extend liability for discrimination to persons acting in the interest of an employer in matters unrelated to employment.

A "person" is defined by the WLAD to include one or more corporations. RCW 49.60.040(19). An affiliated corporation can be an "employer" for WLAD purposes,

13

then, if it acts in the interest of an employee's common law employer, directly or indirectly, in matters related to employment, in which case it can be liable for its own discriminatory acts. Rules promulgated by the Human Rights Commission are in accord. WAC 162-16-220(6) (providing that the separate character of "connected corporations" such as those in a parent-subsidiary relationship may be disregarded if there is a common management of employment policy and personnel management).

Stewart Co.'s motion for summary judgment submitted that there was no genuine issue of material fact that might support Ms. Buhr's claim that it was her common law employer or that it had acted in the interest of Stewart Spokane, directly or indirectly, in matters related to her employment. In support of its motion, it offered the testimony of Anthony Carollo, Stewart Spokane's president, that he interviewed and independently made the decision to hire Ms. Buhr without the involvement of any shareholder; that she reported to him; and that he made the decision to discharge her, without any involvement by Stewart Co. Mr. Carollo testified that Ms. Buhr's compensation and benefits were provided by Stewart Spokane, that it carried workers' compensation insurance for her benefit, and that it paid employment taxes in connection with her employment. He testified that while Stewart Co. is a 51 percent shareholder of Stewart Spokane, Stewart Co. appoints only two of Stewart Spokane's five corporate directors and does not exercise control over Stewart Spokane's day-to-day operations or its employees. He finally testified that Stewart Spokane is responsible for its own liabilities and assets,

14

maintains its own bank accounts, manages its own revenues and operating expenses, funds its own payroll and benefit plans, files independent tax returns, and distributes profits to Stewart Co. and its other, 49 percent Spokane-based shareholder when such distributions are approved by its board of directors.

Stewart Co. also presented the following testimony given by Ms. Buhr when deposed:

> Q. Now, Ms. Buhr, you were hired by Stewart Title of Spokane, correct?
> A. Yes.
> Q. And the work you performed was work for Stewart Title of Spokane, correct?
> A. Yes.
> Q. And you were paid by Stewart Title of Spokane, correct?
> A. Yes.
> Q. And you were supervised by individuals who were employed by Stewart Title of Spokane?
> A. Yes.
> Q. And you received employee benefits through Stewart Title of Spokane?
> A. Yes.
> Q. Were you ever employed by a different Stewart company or entity other than Stewart Title of Spokane?
> [Objection as to speculative.]
> A. No.
> . . . .
> Q. Who did you consider your employer to be when you worked at Stewart Title of Spokane?
> A. Anthony Carollo.

CP at 278-79.

Stewart Co.'s evidence was sufficient to meet its initial burden of demonstrating that there was no genuine issue of material fact on the essential employment element.

Ms. Buhr offered hundreds of pages of evidence in opposition, but none that met the requirements of CR 56(e).

She submitted a declaration in which she testified that she "worked for the national Stewart Title Company, through its local Spokane office—hence, 'Stewart Title *of* Spokane'"; that her company was "based in Houston" and employees referred to the Houston office as "'Corporate'"; and that she represented to customers that they were "Stewart Title based in Houston, acting through its Spokane office," in order to let customers know that they are Spokane originated, but successful and stable nationally. CP at 1804-07. These assertions lacked foundation, were conclusory or hearsay, and were unsupported by specific facts.

She submitted the Form 10-K filed with the United States Securities and Exchange Commission by Stewart Information Services Corporation, a publicly traded company whose stock is listed on the New York Stock Exchange under the symbol "STC" (and whom we refer to hereafter as "STC") for its fiscal year ending December 31, 2006. The Form 10-K identifies Stewart Title Company—the defendant we have referred to as Stewart Co.—as an STC subsidiary incorporated in Texas. Ms. Buhr relies on the consolidated financial reporting and references in the Form 10-K to, e.g., "our" customers, "our" employees, and states in which "we" do business, as evidence that

16

Stewart Co. was Ms. Buhr's employer. Br. of Appellant at 7-10. But the Form 10-K was filed by STC, not Stewart Co., and it states prominently that "[a]s used in this report, 'we', 'us', 'our', the 'Company', and 'Stewart' mean Stewart Information Services Corporation *and our subsidiaries,* unless the context indicates otherwise." CP at 1463 (emphasis added) (italics omitted). The financial statements included were disclosed by the company's auditors to be the "consolidated financial statements of Stewart Information Services Corporation *and subsidiaries.*" CP at 1493 (report of KPMG LLP).

"'It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation . . . is not liable for the acts of its subsidiaries.'" *Minton v. Ralston Purina Co.,* 146 Wn.2d 385, 398, 47 P.3d 556 (2002) (quoting *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998) (quoting William O. Douglas & Carrol M. Shanks, *Insulation from Liability Through Subsidiary Corporations,* 39 YALE L.J. 193 (1929))). Exhibit 21.1 to the Form 10-K reveals that STC has many subsidiaries, including 12 incorporated in the state of Washington. The Form 10-K discloses a reason for the existence of so many subsidiaries, pointing out that "[t]itle insurance companies are subject to comprehensive state regulations covering premium rates, agency licensing, policy forms, trade practices, reserve requirements, investments and the transfer of funds between an insurer and its parent or its subsidiaries and any similar related party transactions." CP at 1466. The fact that STC's business is conducted under a national brand, but by local subsidiaries, is no basis for characterizing

STC, let alone Stewart Co., as Ms. Buhr's employer. She has identified no basis for piercing the corporate veil. *Cf. Ralston*, 146 Wn.2d at 398 (the liability of a parent corporation requires a basis in state law for piercing the corporate veil).

More germane—although not as to Stewart Co.—was Ms. Buhr's evidence that Stewart Spokane relies for payroll functions, some accounting, benefits, and human resources support on a different affiliate, Stewart Title Guaranty (Stewart Guaranty).[1] Stewart Guaranty is not STC and it is not Stewart Co. It is identified in STC's Form 10-K as a distinct STC subsidiary incorporated in Texas. Among Ms. Buhr's evidence of Stewart Spokane's relationship with Stewart Guaranty was her application for employment by Stewart Spokane, which included a directive to Stewart Spokane to "Submit copy to Stewart Title Guarantee-Houston Employee Services." CP at 479 (italics omitted). She offered her "Associate Handbook," identified on its cover page and first page as produced by "Stewart Title of Spokane," but which refers to a 401(k) plan adopted by Stewart Guaranty and its affiliates and includes references to Stewart Title and STC. CP at 879, 881. She offered correspondence that she had with employees of Stewart Guaranty after she was discharged, internal Stewart Guaranty communications

---

[1] The trial court's decision denying Ms. Buhr's motion to extend discovery is not before us for review as it relates to discovery concerning Stewart Guaranty, because that consequence of its decision does not prejudicially affect the court's order granting Stewart Co.'s motion for summary judgment.

dealing with her discharge, and the electronic mail response that she ultimately received from a Stewart Guaranty employee, explaining why she was fired.

She offered portions of Mr. Carollo's deposition testimony, in which he conceded that Stewart Spokane relied on Stewart Guaranty for payroll services and human resources support. As Mr. Carollo explained it, Stewart Spokane employees' time cards were collected, reviewed, and approved by Stewart Spokane management, and then forwarded to Stewart Guaranty for payroll processing. He was unsure whether, in assisting with payroll, Stewart Guaranty paid wages directly from a Stewart Spokane bank account or paid them from a Stewart Guaranty account using funds transferred from or reimbursed by Stewart Spokane. Ms. Buhr tries to cast Mr. Carollo's uncertainty about the banking details as raising a question of who paid Ms. Buhr's wages but his deposition and declaration are clear that whatever the mechanics of deposit, it was Stewart Spokane who paid the wages, directly or indirectly. Ms. Buhr did not offer the tax Forms W-2 that she would have received for the two calendar years she worked at Stewart Spokane that would, pursuant to federal law, disclose the name, address, and tax identification number of her employer.

Ms. Buhr finally offers miscellaneous payroll and human resources documents that include generic references to "Stewart," "Stewart Employee Services," or "Stewart Title." Given the support that Stewart Co. admits was provided to Stewart Spokane by Stewart Guaranty and the existence of a number of other STC subsidiaries revealed by

STC's Form 10-K to have the words "Stewart Title" in their names, Ms. Buhr can only ask that we speculate that those generic references are to Stewart Co. rather than to Stewart Spokane, Stewart Guaranty, or some other affiliate.

Though voluminous, Ms. Buhr's opposition materials do not include evidence made on personal knowledge, setting forth specific facts that create a genuine issue of fact that Stewart Co. was her employer under the WLAD. She presents, at best, allegations, speculation, and argumentative assertions that unresolved factual issues remain.

Unable to demonstrate that Stewart Co. was her common law employer or acted in her employer's interest, Ms. Buhr finally asks this court to read into the WLAD a concept of "integrated enterprises" recognized by federal employment law, and, on that basis, to treat Stewart Co. as her co-employer. As pointed out in *Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 928-29 (9th Cir. 2003), the "integrated enterprise" concept is not applied to determine whether an entity can be jointly liable with a common law employer. It is applied, instead, to determine whether a defendant employs enough people to be subject to Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e. If a common law employer employs enough persons on its own to bring it within Title VII's statutory coverage, the integrated enterprise concept is not needed and does not apply. *Id.*

Washington courts may look to equivalent federal law and cases interpreting such law for guidance in construing the WLAD. *Marquis*, 130 Wn.2d at 109. But Washington cases have previously recognized that the definitions of an "employer" under Title VII and the WLAD are dissimilar. *Scott Paper*, 143 Wn.2d at 358 ("The state and federal statutes offer significantly different definitions of the term 'employer.'"). And if Washington courts were to apply the integrated enterprise concept at all, it would be in the context in which it applies under federal law: to determine whether Stewart Spokane has enough employees to be subject to the WLAD. It does; it has more than eight. There is no reason to apply the integrated enterprise concept.

Finally, Ms. Buhr included a request for an award of attorney fees and costs on appeal under RAP 18.1, pointing to RCW 49.60.030 as a statutory basis for fee and cost recovery by a prevailing plaintiff. She has not prevailed. Her request for fees and costs is denied.

Dismissal of Ms. Buhr's claims against Stewart Co. is affirmed.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.

21